## WHEATON & others *vs.* ANDRESS.

A devise in these words, " As touching *such worldly interest* as it hath pleased God to bless me with in this life, I dispose of the same in manner and form following, that is to say, In the first place, I give and bequeath unto Prudence, my well beloved wife, all my lands and tene-

ments, buildings of whatever kind, with all the appurtenances thereunto belonging, *by her freely to be possessed and enjoyed*," gives only a *life estate*, and not a *fee* to the devisee.

THIS was an action of *ejectment* tried at the Rensselaer circuit, in September, 1832, before the Hon. JAMES VANDERPOEL, then one of the circuit judges.

The plaintiffs claimed to recover the premises in question as the *heirs at law of Prudence Taplin*, who they alleged had an estate in *fee* in the premises by virtue of a devise in the will of her husband, who died seized of the same. The will bears date 8th October, 1807. The only dispositions of property made by it are in these words : " And *as touching such worldly *interest* as it hath pleased God to bless me with in this life, I dispose of the same in manner and form following, that is to say : In the first place, I give and bequeath unto *Prudence*, my well beloved wife, all my lands and tenements, buildings of whatever kind, with all the appurtenances thereunto belonging, *by her freely to be possessed and enjoyed* ; and likewise all my chattels or any kind of moveables, together with all and every my household furniture. 2d. I give and bequeath to the above named *Prudence* all my wearing apparel." The testator left no children. A verdict by consent was entered for the *plaintiffs*, subject to the opinion of the court upon the question whether the devisee took a *fee* or only an *estate for life* under the will.

[ *453 ]

*A. F. Wheeler*, for plaintiffs.

*H. Z. Hayner*, for defendant.

·By the Court, COWEN, J. This ejectment seems to have been brought on the authority of *Loveacres, ex dem. Mudge,* v. *Blight, Cowp.* 352, decided in 1775. The introductory and devising clauses in that case cannot, as the counsel for both parties in the principal case seem to agree, be distinguished in their import from the words used in the will before us ; and they were held to carry a fee. But it is very plain, as the counsel for the defendant contends, that this was not in virtue of their own proper force. They were helped by various other parts of the will : among others, there was a charge on the land incompatible with the idea of a mere estate for life. That is mentioned and much relied on by Lord Mansfield ; and, as is well known to the profession, has often been considered of itself decisive in enlarging the estate to a fee. The will began, " *as touching my worldly estate*," &c. Then, after some intermediate provisions, " I give unto John and Robert Mudge all and singular my lands and messuages, *by them freely to be possessed and enjoyed alike*." It is true, Lord Mansfield relied on the introductory words, as manifesting an intent in the *testator to

[ *454 ]

dispose of all his worldly interest; and with that he joined the words *freely to be possessed*, &c. And he agreed that, independent of these and other circumstances which he took up and connected together from the whole will, there were no words of limitation, such as *heirs*, or what were tantamount. Introductory words of much stronger import have always been denied as sufficient of themselves, though they may help other words. *Vid. Ram. on Wills*, 65, 6. And no case holds that simply connected with the words *freely to be enjoyed*, &c., the whole will carry a fee. To do this, where there are no words of express limitation, all the cases agree that the will should contain some provision in respect to the land necessarily inconsistent with the estate being for life. *Freely to be enjoyed*, &c. may come much short of this.

I have thus, in some measure, followed the counsel for the defendant, who has much elaborated the case in *Cowper*. I entirely agree with him, that it will be found on due consideration, to have been so mixed and compounded with various circumstances in the will, as by no means to form a reliable guide in deciding the case at bar. I do not find, however, that the force of the words in question were at all reconsidered, as he supposes, in *Denn ex d. Gaskin* v. *Gaskin, Cowp.* 657, or in *Wright ex dem Shaw* v. *Russell, id.* 661, the case stated by Ashurst, J. from MS.; though I really think either of them stronger for a fee than the one at bar; and the general reasoning of the court is quite in point against seizing on equivocal words, in order to give the will such an effect. It is remarkable, that in each of the latter cases a disinheriting legacy was given to the heir at law: a circumstance which I should suppose of much more decisive weight, than the doubtful provision, *freely to be enjoyed*, &c. The wills also contained the usual general clause, manifesting the testator's intent to dispose of all his estate. Yet they were held to carry but life estates, and the heir at law recovered.

Thus stopping with Lord Mansfield's decisions alone, one would suppose it impossible to maintain the plaintiff's pretensions upon the will before us. But I am surprised that *the defendant's counsel [ *455 ] should have overlooked the case of *Goodright ex dem. Drewry*, v. *Barron*, 11 *East*, 220, decided A. D. 1809, in which his own views were adopted by the king's bench, and which I cannot distinguish from the case before us. There the will was thus: " As touching such worldly estate wherewith it has pleased God to bless me in this life, I give, devise and dispose of the same in manner following :" 1. a cottage to T. D. and *his heirs*. Then : " also I give and bequeath to my wife Elizabeth, whom I likewise make my sole executrix, all and singular my lands, messuages and tenements, by her freely to be possessed and enjoyed." The question was whether the wife took a fee; and held not. The case was ably argued; and Lord Ellenborough, C. J., Le Blanc, J., and Bayley, J., who spoke to the question *seriatim*, they being the only judges who heard the argument, all concurred.

The case in *Cowper*, 352, was fully considered; and they agreed, that the *introductory words*, and the words *freely*, &c., as used in *East*, would not of themselves carry a fee, because they were not necessarily incompatible with an estate for life. They agreed that the case in *Cowper*, 352, must have gone, not on these alone, but only as considered in connection with various other explanatory circumstances, such as incumbrances imposed, &c. Only one of the learned judges, Le Blanc, J., adverted to the use of the word *heirs* in the devise to T. D. as indicating that the testator understood the value of that word. Lord Ellenborough and Bayley, J. took up the matter on the neat point as presented in the principal case. The former agreed that the introductory words might be material; but alone they made nothing. " They were not sufficient of themselves to carry a fee; but *juncta juvant.*" He said that, in the absence of express words to limit the estate in fee, there must be some words from which an intention to pass the fee would be necessarily implied. Bayley, J., taking up this rule, said " the only words on which any doubt could arise are '*freely to be possessed and enjoyed*' : but they may mean *freely during her life*; they may mean *free from all charges; free from impeachment of waste*; they may

[ *456 ] indeed also mean *freely for *all purposes against the heir*; but as it is not certain that the testator used them in this latter sense, we cannot give them so extended a meaning against the heir."

The reasoning of the counsel for the plaintiffs in the case at bar is this: first, the testator indicated his general intention thus: " as to all my *worldly interest*, all my *property*, all my *estate*, I dispose of *the same*," &c. Then, says the counsel, he in fact gives *the same;* and the counsel relies on these two words in the introductory clause, to bring it down, and connect it with the devise to the testator's wife. But precisely the same words holding the same relation, presented themselves in *Goodright* v. *Barron;* yet held they were entirely inefficient, for the purpose now claimed. " The word *estate*," said Lord Ellenborough, " used in the introductory clause, is completely disjoined from the devise in question, and cannot be brought down to join in with the latter clause, without doing violence to the words." I will only add, it is impossible to distinguish the case at bar from the principle of that to which he was speaking, and scarcely from the very words. The adjudication, we think, accords with the sound rule of construction.

There must be judgment for the defendant.